Donahue, J.
The above-entitled cases were heard and submitted together. They involve the question of the duty of the secretary of state to. print and mail, or otherwise distribute, as far as may be reasonably possible, the arguments and explanations against the proposed constitutional amendments named in the petitions and presented to him by the relators, respectively.
The language found in Section \g of Article II of the Constitution, is too plain, positive and direct to require construction by this or any other court.
By this section the secretary of state is peremptorily commanded to print the law, or. proposed law, or proposed amendment to the constitution, *8 together with the arguments and explanations, not exceeding a total of three hundred words for each, and also the arguments and explanations, not exceeding a total of three hundred words against each, and to mail, or otherwise distribute, a copy of such law, or proposed law, or proposed amendment to the constitution, together with such arguments and explanations for and against the same, to each of the electors of the state, as far as may be reasonably possible.
There can be no reasonable doubt as to the intent and purpose of this provision. The words used exhaust the possibilities of the English language to make the meaning clear.
This same section further provides that this and other provisions of this section of the constitution shall be self-executing; that laws may be passed to facilitate their operation, but not to limit or restrict the same.
In view of the positive language found in this section of the constitution, declaring that this provision shall be self-executing, it is hardly within the province of the secretary of state, or of the supreme court, or any other court, to say that it is not. That it may be difficult of operation is not a sufficient reason for refusing to obey the mandate of the constitution of the state. Language could not have been used by the members of the constitutional convention or by the electors of the state that would give clearer expression to their intention and' purpose in reference to this subject-matter. They undoubtedly had in mind the practical impossibility of covering every detail of the *9 operation of the provisions of the organic law of the state; that some difficulties might arise in relation thereto that could be obviated by laws that would facilitate but not limit or restrict their application, and for that reason and to this extent, but no further, the general assembly is authorized to act. This constitutional provision is a limitation upon the power of the general assembly, and for that reason, if for no other, its framers and the electors of the state who adopted it did not propose or intend that its operation should be left to the pleasure of the general assembly, for, in that case, the failure of that body to act would defeat the will of the people as expressed in the constitution of the state. Nor should the intent and purpose of any provision of the state constitution be defeated by any technical construction of its terms. On the contrary, if the language is sufficiently plain to disclose that intent and purpose, then such construction must obtain as will give full force and effect thereto, even though it be attended with some difficulties.
The justice of the provision requiring that the argument against any proposed constitutional amendment should be distributed in like manner with the argument in its favor, is too apparent to admit of discussion. Any construction of this amendment to the constitution that would deny to the people of the state who may be honestly opposed to a proposed constitutional amendment the same means and method of giving publicity to their argument against it as is provided for giving publicity to the arguments in its favor, would be *10 not only unfair to those opposed to it, but would work a fraud upon the electorate of the state. It would be absurd to say that such a construction would be giving effect to the intention and purpose of the people of this state, who have written this provision into our constitution, and yet that intention and purpose must be the polestar to guide the court in the interpretation of its provisions.
In the particular cases under consideration the operation of this provision of the constitution presents no difficulty whatever. In each case it is admitted that the argument presented to the secretary of state was presented by electors honestly and conscientiously opposed to the proposed amendment to the constitution, and no more than one such argument against each amendment has been presented. It further appears that these arguments have been presented by persons having the official sanction of the governor, who is the chief executive officer of the state. No controversy arises as to the good faith of the arguments presented, and there is no conflict between contending factions claiming the right to present such arguments. By the printing and distributing of these arguments in the respective cases the command of the constitution is obeyed, and no injustice is done to anyone.
Notwithstanding that in these particular cases no conflict arises between persons or factions claiming the right to present these arguments to the secretary of state, it is contended, nevertheless, that such a conflict may arise in future cases, and that when such conflict does arise, then *11 this provision can not be self-executing, because neither the constitution nor the statutory law of the state provides any method by which the secretary of state may determine who may prepare and file this argument, or, in case more than one argument is prepared and filed with him, which one of these arguments shall be printed and distributed, and that, therefore, if this provision of the constitution is not self-executing in all cases it is not self-executing in any.
This contention overlooks the fact that the constitution expressly provides that this provision shall be self-executing in all cases, and it also overlooks the further, fact that when the constitution commands an officer of the- state to do a particular thing, the mere omission to point out in detail the manner and method of doing it does not excuse the officer from performing the duty enjoined upon him by the supreme law of the land. If a master commands a servant to do a particular thing, without directing him in detail how he shall do it, it is a fair and necessary presumption that the servant is to exercise an intelligent discretion in doing the thing commanded to be done. Certainly affairs of state must be conducted on as equally intelligent lines as private business. Therefore, if the constitution of the state commands a public officer to do a particular thing, without directing the manner in which it shall be done, and the general assembly of the state has not, in the-exercise of the authority conferred upon it, enacted any laws to facilitate the operation of the provisions of the constitution, it necessarily follows that the officer who is re *12 quired to perform this duty has implied authority to determine, in the exercise of a fair and impartial official discretion, the manner and method of doing the thing commanded; otherwise, full directions would have been given the officer or the duty would not have been imposed upon him. It would be the merest folly to command him to do a particular thing and then withhold from him the power to do it.
It is provided by statute that the secretary of state shall be the chief election officer of the state, and as such he is clothed with ample authority to do and perform all duties in relation to elections enjoined upon him by the constitution or the statutory laws of this state. In some cases the law specifically provides that he shall hear and determine controversies arising in relation to his duties, particularly in matters preliminary to elections. The presumption naturally obtains that he will fairly and honestly discharge his duties in this behalf and determine all questions he is called upon to decide according to the justice of the case, regardless of his own personal preferences or political affiliations, and there is no apparent reason why he cannot or will not exercise the same fair and impartial judgment in controversies arising under the provisions of this section of the constitution .that he would exercise in other matters pertaining to elections.
Our attention is called to the act of the general assembly of Ohio, passed April 18, 1913, entitled, “An act to provide for the submission of publicity pamphlets by the state, county or municipality, *13 relative to measures submitted to the people through the initiative and referendum,” which act has been given sectional numbers 5018-1 to 5018-9, inclusive, of the General Code.
It. is clear that this act does not facilitate the operation of this particular provision of Section lg of Article II of the Constitution. It may have-been intended to do so, but if that were the intention it fails in the'accomplishment of its purpose.
The constitution vests in the general assembly authority to enact legislation that will relieve this provision from all possible doubt and uncertainty, and this could be done by providing in detail the manner and method of the selection of a person or persons to prepare and file an argument or explanation, or both, against any proposed constitutional amendment, or by specifically granting, in terms, to the secretary of state the power and authority now necessarily implied. Undoubtedly this will be done as soon as the attention of the general assembly is called to the fact that there is need of such legislation; but whether such laws are passed or not, the mandate of the constitution must be obeyed, and if any question or doubt arises as to the manner and method of doing this, that question must be answered and that doubt resolved by the application of the same ordinary intelligence of men that is applied to the solution of everyday problems of life.

Peremptory writs allowed. ■

Nichols, C. J., Johnson, Wanamaker, Newman, Jones and Matthias, JJ.,. concur.